

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00578-CV

**IN THE INTEREST OF V.M.C.G.**, a Child

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA00847
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:       Lori I. Valenzuela, Justice
               Lori Massey Brissette, Justice
               Adrian A. Spears II, Justice

Delivered and Filed: March 19, 2025

AFFIRMED

This case involves the termination of parental rights to a child who, at the time of the final hearing, was sixteen months old.[1] Both parents appeal the trial court's order terminating their parental rights. Mother challenges the sufficiency of the evidence to support the trial court's grounds for termination and the best-interest finding, and separately challenges the trial court's conservatorship finding. Father challenges only the trial court's best-interest finding. We affirm the trial court's order.

---

[1] To protect the identity of the minor child, we will refer to appellants as "Mother" and "Father" and to their child by her initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8.

**BACKGROUND**

Mother tested positive for methamphetamine at the birth of V.M.C.G. in March of 2023. V.M.C.G. was born premature at thirty weeks and three days and remained in the hospital for approximately two and a half months after birth due to medical issues. Rather than allow the baby to go home with Mother upon discharge, the Department of Family and Protective Services sought and obtained an emergency order removing the child from Mother and naming the Department as temporary managing conservator. The baby was then placed with a foster-to-adopt family.

Mother was given a family service plan that required her to engage in and complete drug treatment, drug testing, and domestic violence classes, as well as individual counseling and parenting classes. During the pendency of the underlying proceeding and a year after V.M.C.G.'s birth, Mother admitted use of methamphetamine and a hair follicle test was positive for the same drug. She also no-showed for multiple drug tests in 2024. While Mother completed an intake assessment and began outpatient treatment for drug use, she was unsuccessfully discharged from the program. She was later referred for an evaluation for inpatient treatment, but she did not follow through. And, while she completed a psychological evaluation, she failed to engage in the recommended counseling.

Father was incarcerated for drug possession when V.M.C.G. was born and was released on parole in December of 2023. In January of 2024, Father was given a family service plan that required him to engage in and complete drug treatment, drug testing, and domestic violence intervention classes, as well as individual counseling and parenting classes. Father completed a psychological evaluation, but he did not engage at all with domestic violence services. He also failed to engage in any of the recommended counseling, despite receiving three different

counseling referrals from January through June of 2024. Father completed a substance abuse assessment but was discharged for failure to engage in his group therapy, and after completing another substance abuse assessment, Father failed to engage with the recommended residential treatment. Father tested positive for drugs in May of 2024, and he no-showed for all of his drug tests in June and July of 2024. Father also missed at least five visits with V.M.C.G. from May of 2024 until the August 2024 trial.

At trial, the court heard testimony by Mother, Department caseworker Walden Wong, and the foster father. At the conclusion of trial, the trial court terminated both parents' rights to V.M.C.G. and appointed the Department as permanent managing conservator. The trial court found Mother knowingly placed or allowed V.M.C.G. to remain in conditions that endangered her physical or emotional well-being, failed to comply with court-ordered provisions of the family service plan, and used a controlled substance in a manner that endangered V.M.C.G. *See* TEX. FAM. CODE § 161.001(b)(1)(D), (O), & (P). The trial court further found Father constructively abandoned V.M.C.G., demonstrated an inability to provide V.M.C.G. with a safe environment, and failed to comply with court-ordered provisions of the family service plan. *See id.* § 161.001(b)(1)(N), (O). The trial court found termination of both parents' rights was in V.M.C.G.'s best interest. *See id.* § 161.001(b)(2). Both parents appealed.

## STANDARD OF REVIEW

A suit involving the potential termination of a parent's right to a child is of constitutional import. *See In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied). But a parent's rights "are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). Striking that balance, a trial court may terminate a parent-child

relationship, pursuant to Texas Family Code section 161.001, only if it finds by clear and convincing evidence one predicate ground enumerated in subsection (b)(1) and that termination is in the child's best interest. TEX. FAM. CODE § 161.001(b)(1)–(2); *see, e.g.*, *In re C.E.*, 687 S.W.3d 304, 308 (Tex. 2024). Clear and convincing evidence requires proof that will produce in the factfinder's mind "a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007. This heightened standard "guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.).

When reviewing the evidence in a parental termination case, we apply the well-established standards associated with both a legal and factual sufficiency review. *In re J.M.G.*, 608 S.W.3d 51, 53 (Tex. App.—San Antonio 2020, pet. denied). First, in a legal sufficiency review, we "view the facts in a light favorable to the findings of the trial judge, who heard the testimony, evaluated its credibility, and dealt the closest with the evidence at hand." *In re R.R.A.*, 687 S.W.3d 269, 276 (Tex. 2024) (quoting *In re J.F.-G.*, 627 S.W.3d 304, 315 (Tex. 2021)) (internal quotation marks omitted). We will not substitute our own judgment for that of the factfinder. Instead, the factfinder is the sole judge of evidentiary weight and credibility, including witness testimony. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). We will "defer to the [factfinder's] determinations, at least so long as those determinations are not themselves unreasonable." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)) (internal quotation marks omitted).

In our review, we must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

While we will disregard all evidence contrary to a factfinder's determination if a reasonable factfinder could have disbelieved or found it to have been incredible, we will not disregard undisputed evidence even if it does not support the trial court's finding. *Id.*; *C.E.,* 687 S.W.3d at 308.

In our factual sufficiency review, we consider the entire record and determine whether, in light of the entire record, any disputed evidence "is so significant that a factfinder could not reasonably have formed a firm belief or conviction" on the challenged finding. *J.F.C.*, 96 S.W.3d at 266.

### LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE PREDICATE GROUNDS FOR TRIAL COURT'S TERMINATION OF MOTHER'S PARENTAL RIGHTS

Mother's parental rights were terminated pursuant to multiple predicate grounds, specifically (D), (O), and (P). If, as here, the trial court terminates the parent-child relationship on multiple grounds under section 161.001(b)(1), we may affirm on any one ground because only one predicate violation under section 161.001(b)(1) is necessary to support a termination order. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re F.B.C.L.*, No. 04-20-00477-CV, 2021 WL 1649221, at *1 (Tex. App.—San Antonio Apr. 28, 2021, no pet.) (mem. op.). However, regardless of our holding with regard to subsection (O) and (P) of section 161.001(b)(1), we must still consider Mother's issues relating to the sufficiency of the evidence to support the trial court's findings under subsection (D) because termination under subsection (D) may serve as the basis for a future termination of parental rights. *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019); *see also In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022) ("[W]e may not bypass Father's evidentiary challenges to Subsections (D) and (E), the so-called endangerment grounds. Those grounds bear special significance because termination of a parent's rights under

either can serve as a ground for termination of his rights to *another* child."). Therefore, we begin by analyzing the sufficiency of evidence under subsection (D).

## A. Applicable Law

To terminate parental rights pursuant to subsection (D), the Department must prove by clear and convincing evidence the parent knowingly placed the child in or allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being. TEX. FAM. CODE § 161.001(b)(1)(D); *In re I.N.D.*, No. 04-20-00121-CV, 2020 WL 2441375, at *3 (Tex. App.—San Antonio May 13, 2020, pet. denied) (mem. op.). "Conditions or surroundings" establishing endangerment include "[i]nappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis." *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.). "Endanger," as used in subsection (D), means to expose to loss or injury or to jeopardize a child's emotional or physical health. *See Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (construing predecessor statute). An environment that endangers the child may be created by the physical living conditions in the child's home or by the conduct of a parent living in the home. *In re R.S.-T.*, 522 S.W.3d 92, 108–09 (Tex. App.—San Antonio 2017, no pet.). A parent knowingly places or allows a child to remain in an endangering environment when the parent is aware of the potential danger but disregards it. *M.R.J.M.*, 280 S.W.3d at 502. A child may therefore be endangered when the home environment creates a potential for emotional or physical injury even where the injurious conduct is not directed at the child and the child does not suffer injury. *Boyd*, 727 S.W.2d at 533; *I.N.D.*, 2020 WL 2441375, at *3.

"Parental and caregiver illegal drug use and drug-related criminal activity [] supports the conclusion that the children's surroundings endanger their physical or emotional well-being." *In*

*re J.A.B.*, No. 04-23-00907-CV, 2024 WL 1421986, at \*2 (Tex. App.—San Antonio Apr. 3, 2024, pet. denied) (quoting *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.)); *see J.W.*, 645 S.W.3d at 749 ("Certainly, Mother's use of controlled substances while pregnant created a dangerous environment for [the child]"). "The relevant period for review of conduct and environment supporting termination under statutory ground D is before the Department removes the child." *R.S.-T.*, 522 S.W.3d at 109 (citing *J.O.A.*, 283 S.W.3d at 345); *see J.W.*, 645 S.W.3d at 749. Subsection (D) permits termination based upon only a single act or omission. *R.S.-T.*, 522 S.W.3d at 109.

**B. The Evidence at Trial Addressing Subsection (D)**

The evidence at trial supporting endangerment addressed Mother's methamphetamine use before and during her pregnancy. Mother testified she used methamphetamine on and off for about ten years prior to the birth of V.M.C.G. She further testified she continued to use methamphetamine throughout her pregnancy and that she smoked cigarettes during her pregnancy to help her cut down on her methamphetamine use. Mother stated that every time she saw an OB/GYN doctor during her pregnancy, she admitted to the doctor that she was using methamphetamine during her pregnancy. Mother also testified that her urine test was positive for methamphetamine at V.M.C.G.'s birth. Finally, Mother stated that V.M.C.G. was born premature at thirty weeks and three days and remained in the hospital for approximately two and a half months after birth due to medical issues.

**C. Analysis**

Mother argues there is legally and factually insufficient evidence to support termination of her parental rights under subsection (D) because (1) Mother's past behavior choices do not demonstrate ongoing endangerment to V.M.C.G; (2) Mother moved out of V.M.C.G.'s

grandmother's house, and there is no evidence that Mother's current home posed any risk to V.M.C.G.'s safety; and (3) the Department relied on conclusory evidence and a mere general claim of instability. In her sufficiency challenge to termination under subsection (D), Mother does not explicitly address the evidence of her methamphetamine use during her pregnancy.

Because the relevant period for review of conduct and environment supporting termination under subsection (D) is before the Department removes the child, evidence regarding Mother's actions after the Department had removed V.M.C.G. is irrelevant to the sufficiency of the evidence supporting termination under subsection (D). *See R.S.-T.*, 522 S.W.3d at 109; *J.W.*, 645 S.W.3d at 749. This includes Mother's decision to move out of V.M.C.G.'s grandmother's house after the Department had removed V.M.C.G.

Based on Mother's admitted methamphetamine use throughout her pregnancy and her positive test for methamphetamine at V.M.C.G.'s birth, the trial court could have formed a firm belief or conviction Mother's actions endangered V.M.C.G. by knowingly placing her or allowing her to remain in conditions or surroundings endangering her physical or emotional well-being. *See* Tex. Fam. Code § 161.001(b)(1)(D); *I.N.D.*, 2020 WL 2441375, at *3; *J.A.B.*, 2024 WL 1421986, at *2; *J.T.G.*, 121 S.W.3d at 125; *J.W.*, 645 S.W.3d at 749. We therefore hold the evidence is both legally and factually sufficient to support the trial court's endangerment finding under subsection (D). *See* Tex. Fam. Code § 161.001(b)(1)(D); *J.O.A.*, 283 S.W.3d at 346 (trial court is sole judge of weight and credibility of evidence, including testimony). Because legally and factually sufficient evidence supports the trial court's termination on ground (D), and a finding of only one ground for termination is necessary to support termination, we need not consider whether the evidence would support termination on subsections (O) and (P) grounds. *See A.V.*, 113 S.W.3d at 362; *see also* Tex. R. App. P. 47.1.

**LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE TO SUPPORT THE TRIAL COURT'S BEST INTEREST FINDINGS**

Mother and Father argue the evidence was legally and factually insufficient to support the trial court's findings that termination of their parental rights was in the best interest of the child. We disagree.

## A. Applicable Law

Under Texas law, "there is a strong presumption that the best interest of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, a trial court must also presume "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE § 263.307(a). In making a best-interest determination, the factfinder looks at the entire record and considers all relevant circumstances. *In re C.H.*, 89 S.W.3d 17, 27–29 (Tex. 2002).

The Texas legislature codified certain factors to use in determining the best interest of a child, including:

(1)     the child's age and physical and mental vulnerabilities;

(2)     the frequency and nature of out-of-home placements;

(3)     the magnitude, frequency, and circumstances of the harm to the child;

(4)     whether the child has been the victim of repeated harm after the initial report and intervention by the department;

(5)     whether the child is fearful of living in or returning to the child's home;

(6)     the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home;

(7)     whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home;

(8)     whether there is a history of substance abuse by the child's family or others who have access to the child's home;

(9)     whether the perpetrator of the harm to the child is identified;

(10)    the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision;

(11)    the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time;

(12)    whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with:

 (A)     minimally adequate health and nutritional care;

 (B)     care, nurturance, and appropriate discipline consistent with the child's physical and psychological development;

 (C)     guidance and supervision consistent with the child's safety;

 (D)     a safe physical home environment;

 (E)     protection from repeated exposure to violence even though the violence may not be directed at the child; and

 (F)     an understanding of the child's needs and capabilities; and

(13)    whether an adequate social support system consisting of an extended family and friends is available to the child.

TEX. FAM. CODE § 263.307(b); *see In re A.C.*, 560 S.W.3d 624, 631 n.29 (Tex. 2018) (recognizing statutory factors as additional factors for consideration). Even before the legislature took action to codify section 263.307(b), the Texas Supreme Court, in *Holley v. Adams*, identified factors to determine the best interest of a child:

 (A)     the desires of the child;

 (B)     the emotional and physical needs of the child now and in the future;

 (C)     the emotional and physical danger to the child now and in the future;

(D)    the parental abilities of the individuals seeking custody;

(E)    the programs available to assist these individuals to promote the best interest of the child;

(F)    the plans for the child by these individuals or by the agency seeking custody;

(G)    the stability of the home or proposed placement;

(H)    the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)    any excuse for the acts or omissions of the parent.

544 S.W.2d 367, 371–72 (Tex. 1976).

The Department does not have to prove every factor for a trial court to find termination is in the child's best interest. *C.H.*, 89 S.W.3d at 27. In our review of the trial court's best-interest findings, we must consider "the totality of the circumstances" in light of these factors to determine whether sufficient evidence supports the challenged finding. *In re B.F.*, No. 02-07-334-CV, 2008 WL 902790, at *11 (Tex. App.—Fort Worth Apr. 3, 2008, no pet.) (mem. op.). Additionally, "[a] trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

"The evidence supporting the statutory grounds for termination may also be used to support a finding that the best interest of the child warrants termination of the parent-child relationship." *In re S.M.G.*, No. 01-17-00056-CV, 2017 WL 2806332, at *6 (Tex. App.—Houston [1st Dist.] June 29, 2017, pet. denied) (mem. op.). "Evidence of a parent's unstable lifestyle, including habitual drug and alcohol use, can support the conclusion that termination is in the child's best interest." *In re F.M.*, No. 14-18-00384-CV, 2018 WL 4925127, at *7 (Tex. App.—Houston [14th Dist.] Oct. 11, 2018, pet. denied) (mem. op.); *see* TEX. FAM. CODE §

263.307(b)(8) (providing as one factor whether there is history of substance abuse by child's family or others who have access to child's home). "While the recent improvements made by [a parent in a termination proceeding] are significant, evidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of drug use and irresponsible choices." *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

### B. Analysis

Here, Mother and Father contend the trial court failed to apply the *Holley* factors and did not have sufficient evidentiary support for finding that termination of their parental rights was in the best interest of the child. We disagree.

### 1. The Physical and Emotional Danger to the Child

Mother argues that because her positive drug tests are "in the past," and because she is making significant efforts to address her drug issues, Mother's home environment does not pose a physical or emotional danger to V.M.C.G. The assigned CPS caseworker Walden Wong testified that he believes it is in V.M.C.G.'s best interest that Mother's parental rights be terminated and that Mother has failed to show she can maintain sobriety from methamphetamine and make positive personal changes in order to properly care for her child.

Mother testified that she has been present for every hearing in her case and admitted that, at every single hearing, the judge admonished her on the record that her parental rights could be terminated if she did not work on the service plan. Nevertheless, Mother admits that she used methamphetamine after the child was born in March 2024, obtaining the drug from a friend. She also tested positive for a hair follicle test in June 2024. Further, Wong testified that she no-showed for multiple drug tests in 2024, was unsuccessfully discharged from an outpatient drug program, and failed to begin an inpatient drug treatment program that was made available to her.

Mother's extensive history of drug use, her admitted use of methamphetamine during her pregnancy and during the pendency of the case, and her failure to successfully complete counseling or drug treatment all support the trial court's best interest finding. *See* TEX. FAM. CODE § 263.307(b)(3), (8), (10), (11); *Holley*, 544 S.W.2d at 371–72 (factors (C)–(E), (H)); *F.M.*, 2018 WL 4925127, at *7.

Father argues that the Department failed to provide any testimony or other evidence that Father would create an emotional or physical danger to V.M.C.G. In his sufficiency challenge to the trial court's best-interest finding, Father does not address his criminal history or his substance abuse problem.

Without objection, the trial court admitted into evidence exhibits illustrating Father's criminal history, including copies of Father's judgment of conviction for endangering a child, his judgment of conviction for evading arrest, and two judgments of conviction for possession of a firearm as a convicted felon. Mother testified that Father was incarcerated for drug possession when V.M.C.G. was born. At trial, Wong testified Father acknowledged he has a drug problem, and Father's counsel admitted that Father has "an ongoing drug issue." Wong testified that Father had a positive drug test in May 2024, and he no-showed for all of his drug tests in June and July of 2024. Wong further testified Father's probation officer informed Wong that Father had a positive probation drug test in 2024. Wong testified that he believes it is in V.M.C.G.'s best interest that Father's parental rights be terminated and that Father has failed to show willingness to make positive personal changes in order to properly care for his child.

Father's criminal history including a conviction for endangering a child, his positive drug test and no-shows during the pendency of the case, and his failure to successfully complete counseling, drug treatment, or domestic violence services all support the trial court's best interest

finding. *See* TEX. FAM. CODE § 263.307(b)(3), (8), (10), (11); *Holley*, 544 S.W.2d at 371–72 (factors (C)–(E), (H)); *F.M.*, 2018 WL 4925127, at *7.

### 2. The Child's Needs and Desires

Mother argues that her ongoing efforts to maintain contact with V.M.C.G. show her commitment to keeping the mother-child bond intact and show that termination would not best serve V.M.C.G.'s long-term needs and desires. Father argues that insufficient evidence was presented regarding V.M.C.G.'s needs and desires, because there was no evidence that Father caused V.M.C.G. harm at any of his visits, and because Father had completed a parenting class and previously raised another child.

Because V.M.C.G. is too young to express her desires, the factfinder may consider whether V.M.C.G. has bonded with caregivers, is well-cared for by them, and has spent minimal time with a parent. *See In re N.J.D.*, No. 14-17-00711-CV, 2018 WL 650450, at *6 (Tex. App.—Houston [14th Dist.] Feb. 1, 2018, pet. denied) (mem. op.). Foster father and foster mother have cared for V.M.C.G. ever since June 2023, when she was released from her months-long hospital stay following her premature birth. Foster father testified that he loves V.M.C.G. and that she is very happy. He further testified that V.M.C.G. has a foster sister who is about 11 months old and that the two foster children are bonded with each other.

V.M.C.G.'s severe health issues have required extensive ongoing treatment, and foster father testified that he and foster mother have been to over 130 different doctor's appointments with V.M.C.G. Foster father stated they have also taken V.M.C.G. to multiple physical and speech therapies with two different companies, and that under their care, V.M.C.G. has gained the abilities to walk and eat on her own. Foster father testified that he and foster mother are getting additional care for her ongoing swallowing problems. Foster father stated that due to

V.M.C.G.'s premature birth, every development is three to four months behind, and that he and foster mother are committed to continue with any needed care. *See* TEX. FAM. CODE § 263.307(b)(1); *Holley*, 544 S.W.2d at 371–72 (factors (A)–(D), (F)).

### 3. The Present and Future Emotional and Physical Needs of the Child and Appellants' Parental Abilities

V.M.C.G. has significant health care needs relating to her extensive health issues. Mother testified that her transportation issues got in the way of visits and completion of her service plan. Wong testified that to his knowledge Father has not had a car since his release from prison, and Mother testified that she gave Father several rides since his release. Wong also testified that Father missed at least five visits with V.M.C.G. from May of 2024 until trial. Mother and Father's transportation issues, their drug use, their failures to successfully complete their family service plans, and Father's failure to attend visits with V.M.C.G. all indicate that Mother and Father cannot meet V.M.C.G.'s specific and extensive needs. *See* TEX. FAM. CODE § 263.307(b)(1), (12); *Holley*, 544 S.W.2d at 371–72 (factors (C)–(D)).

### 4. The Programs Available to Assist Mother and Father to Promote the Best Interest of the Child

Wong testified that after Mother completed her psychological assessment, she began to engage in individual counseling. However, she was unsuccessfully discharged for lack of engagement in Spring 2024, and she has not reengaged with the next counselor that Wong referred even though that counselor provides virtual services. Wong testified that starting in August 2023, he sent Mother multiple referrals to Outreach, Screening, Assessment and Referral for drug treatment, but Mother no-showed for her appointments. Wong stated that around January 2024, Mother did an assessment with Lifetime Recovery and was recommended outpatient treatment. Wong testified that Mother engaged at first with outpatient treatment but

was unable to complete the program and was discharged unsuccessfully. Wong then tried again to get Mother to reengage in drug treatment in June 2024, and although Mother did a new drug assessment in July, she has not successfully started the recommended residential treatment with Alpha Home. Wong testified that Mother's lack of engagement with drug treatment concerns him, and that drug treatment is especially important for someone with a long history of addiction.

Wong testified that shortly after Father was released on parole in December of 2023, Wong explained to Father the requirements of his family service plan. Wong testified that Father completed a parenting class, but he never engaged at all with the recommended domestic violence services, and he failed to successfully complete any of the counseling and drug treatment from his service plan. Wong testified Father was initially referred for individual counseling with Victoria Caylor, but he failed to do any paperwork or sign up to engage with her. Wong then sent Father a referral for virtual counseling with Patricia Boone, but Father no-showed a few times and was terminated by Boone. Then Wong sent Father a referral for counseling with Let's Talk Counseling Services, but Wong testified Father did not sign up with that service provider prior to trial. Wong further stated that Father completed a substance abuse assessment but was discharged by Elite Counseling for failure to engage in his group therapy. Father then completed another substance abuse assessment, but Father failed to engage with the recommended residential treatment with Lifetime Recovery, even though Wong emailed, texted, and called him. At trial, Wong testified that Father had recently stopped returning any of his calls.

Mother and Father's failure to successfully complete their family service plans supports the trial court's best interest finding. *See Holley*, 544 S.W.2d at 371–72 (factor (E)); *see also, e.g.*, *In re B.R.T.*, No. 04-22-00416-CV, 2023 WL 29381, at *6 (Tex. App.—San Antonio Jan. 4,

2023, no pet.) (mem. op.) (evidence parent did not complete family service plan is probative of child's best interest).

### 5. Stable Employment and Quality of New Placements

Mother testified that she has not had a job where she worked for someone else for more than two months since 2018 or 2019, and that the last time she did self-employment work such as babysitting and yard cleaning was probably before December 2022. *See Holley*, 544 S.W.2d at 371–72 (factors (G)–(H)). It is, therefore, unclear how Mother would meet the financial needs of the child. Although Wong testified that he confirmed Father was employed by his brother after his release from prison, Father's criminal history and ongoing substance abuse problem indicate that he would not provide the stability V.M.C.G. needs. *See id.*

Foster father, on the other hand, testified he owns a carwash and is the general manager of two others, and foster mother works in the medical industry for a company she has been with for several years. *See id.* (factors (D), (G)). Further, as set out above, the foster parents are ensuring V.M.C.G. gets appropriate medical treatment and have created an emotional bond with the child. Thus, by all accounts, V.M.C.G.'s foster-to-adopt placement is meeting V.M.C.G.'s needs. *See id.*

### 6. Summary

Here, applying our standard of review for legal sufficiency and viewing the evidence in a light favorable to the trial court's findings, and given that we can only go on the conduct of Mother and Father to date, we conclude the trial court could have reasonably formed a firm belief or conviction termination of Mother and Father's parental rights was in the best interest of V.M.C.G. *See In re R.R.A.*, 687 S.W.3d 269, 276 (Tex. 2024); *In re J.O.H.*, 617 S.W.3d 596, 599 (Tex. App.—San Antonio 2020, no pet.) (holding that, in considering child's best interest,

parent's future conduct may be judged by past conduct). Turning to factual sufficiency, we further conclude that when viewing the entire record, any evidence contrary to the finding is not so significant that it would prevent a reasonable factfinder from forming the same firm belief or conviction termination of parental rights was in V.M.C.G.'s best interest. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

The record before us therefore demonstrates sufficient evidence to support the trial court's findings that termination of Mother and Father's parental rights is in the best interest of V.M.C.G. *See* TEX. FAM. CODE § 161.001(b)(2).[2]

**CONCLUSION**

We affirm the trial court's order.

Lori Massey Brissette, Justice

---

[2] Mother also challenges the trial court's conservatorship determination on the basis that conservatorship should be reconsidered where a trial court's termination order is reversed on appeal. But because this argument requires Mother to prevail on one of her other two issues, and because we have overruled those issues, Mother has been divested of her legal rights and duties related to V.M.C.G., so she lacks standing to challenge the portion of the judgment appointing the Department as V.M.C.G.'s permanent managing conservator. *See, e.g., In re A.K.B.*, No. 04-23-00154-CV, 2024 WL 3056663, at *27 (Tex. App.—San Antonio June 20, 2024, no pet.). We overrule her final issue.